IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

COURTNEY BOYD, #208921,        )
                              )
            Plaintiff,        )
                              )
     v.                       )      CASE NO. 2:07-CV-961-CSC
                              )             [WO]
                              )
SHAMEKA FOSTER, et al.,        )
                              )
            Defendants.       )

## MEMORANDUM OPINION

### I. INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by

Courtney Boyd ["Boyd"], a state inmate and frequent litigant in this court, on October 24,

2007.   In his complaint, Boyd alleges Shemekia Foster, a mental health professional

employed at Easterling Correctional Facility [ "Easterling"], Mental Health Management

Services, Inc., Ms. Foster's employer, and Jeffery Knox, a correctional officer at Easterling,

violated his First Amendment right to freedom of expression with respect to a letter he wrote

to Ms. Foster.[1]   Boyd also alleges Ms. Foster violated her patient/counselor oath when she

divulged the contents of this letter to correctional officials.   Boyd further challenges his

placement in the restricted privilege dorm as violative of his due process rights and argues

the placement constituted cruel and unusual punishment.   Boyd next complains correctional

officers Steve Canty and Dexter Baldwin acted with deliberate indifference to his mental

---

[1]Boyd lists Ms. Foster's first name as Shameka when it is, in fact, Shamekia.

health.[2]  Finally, Boyd alleges the actions of the defendants constituted negligence.  Boyd

seeks a declaratory judgment, injunctive relief and monetary damages.

The defendants filed special reports and supporting evidentiary materials addressing

each of Boyd's claims for relief.  Pursuant to the orders entered in this case, the court deems

it appropriate to treat these reports as motions for summary judgment.  *Order of December

20, 2007 - Court Doc. No. 23*; *Order of July 1, 2008 - Court Doc. No. 82*.  Thus, this case is

now pending on the defendants' motions for summary judgment.  Upon consideration of such

motions, the evidentiary materials filed in support thereof and Boyd's responses in opposition

to the motions, the court concludes that the defendants' motions for summary judgment are

due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11[th]  Cir.

2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary

judgment "should be rendered if the pleadings, the discovery and disclosure materials on file,

and any affidavits show that there is no genuine issue as to any material fact and that the

---

[2]Boyd initially identifies officer Baldwin as D. Balivan.  The correctional defendants advise this officer's correct name is Dexter Baldwin.

movant is entitled to judgment as a matter of law.").[3]    The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

---

[3]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for summary judgment, Boyd is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where

4

inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing

5

summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Boyd fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

### III.  DISCUSSION

### A.  Absolute Immunity

With respect to any claims Boyd lodges against the defendants in their official capacities, they are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).  Thus, each of the defendants is entitled to absolute immunity from those claims for monetary relief presented against them in their official capacities.  *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  The First Amendment Claim

On October 3, 2007, Boyd wrote a letter to defendant Foster which she deemed to contain inappropriate statements.  Ms. Foster did not request that Boyd write the letter nor was it part of any treatment regiment set forth by Foster.  In this letter, Boyd "took certain questions and comments made [in a prior mental health] evaluation session out of context" and made statements in reference to Ms. Foster that were wholly "personal in nature" with no treatment value  *Defendant Foster's Exhibit A (Affidavit of Shemekia Foster) - Court Doc. No. 20-1* at 2; *Correctional Defendants' Exhibit 3 (October 3, 2007 Letter from Courtney Boyd to Ms. Foster) - Court Doc. No. 22-1* at 4-5 ("A man will be crazy not to find you beautiful....  I'm not in love with you, but yes I love you as a black woman, so that why I enjoy talking with you, because you are not just a yes person....  I would love to have ... seen you on the street, and then I could have asked you out being that you seem like a very good woman, until you get mad.  But don't take this the wrong way, I will be crazy not to want to have you for a wife, because you don't find to many black women who don't try to live off a man with money....").  In accordance with prison policy, Foster referred Boyd's letter to Capt. Jeffery Knox for review.  Based on the contents of this letter, Boyd received a behavior citation for violating institutional rules and regulations which prohibit fraternization with or disrespect of staff.  *Correctional Defendants' Exhibit 2 - Court Doc. No. 22-1* at 3.  This citation resulted in the temporary loss of telephone, canteen and visitation privileges and placement in the restricted privilege dorm for 30 days.  *Id.*

Boyd complains defendant Foster  referred his letter to correctional officials for their

review and Knox utilized this letter for disciplinary purposes in retaliation for expressing his feelings in violation of his First Amendment rights to freedom of speech and expression. These defendants, however, maintain that they undertook the challenged actions solely because the letter violated institutional rules and regulations. The affidavits and evidentiary materials submitted by the defendants, including documents contained in Boyd's institutional file, support this assertion.

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)]. As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources...." *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259 (1987). Correctional officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081 (1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974) (quotation marks and citation omitted); *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1877 (1979).

"In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001), quoting *Pell*, 417 U.S. at

9

822, 94 S.Ct. at 2804.  In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822, 924 S.Ct. at 2804.  Any right protected by the First Amendment is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order.  The law is well settled that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."  *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1878 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.").  It is therefore clear that preservation of security and order within a correctional facility is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest.  *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

"The first amendment prohibits state officials from retaliating against prisoners for exercising their right of free speech.  *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968 (11th Cir. 1986)].... The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech."  *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  "In prison, of course, first amendment rights are not absolute.  *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).

10

Legitimate policies and goals of the correction system may justify restrictions limiting prisoners' [First Amendment] rights.  417 U.S. at 821."  *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986).  "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system.' *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (resist)) (internal quotation marks omitted)....  [P]rison authorities have a legitimate penological interest in the consistent enforcement of prison rules and ... disciplining prisoners who attempt to coerce a guard into not enforcing prison rules is reasonably related to that interest." *Hargis v. Foster*, 312 F.3d 404, 409-410 (9th Cir. 2002); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).  The situation is somewhat complicated when the alleged act of retaliation is undertaken to assure compliance with prison rules as inmates often attempt to "inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

To proceed on a claim for retaliation and withstand the entry of summary judgment, an "inmate must establish ... three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendant's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See*

11

*Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

An inmate does not retain First Amendment rights which are inconsistent with his status as a prisoner. *Prison Legal News*, 238 F.3d at 1149. In addition, "[l]egitimate policies and goals of the correction system may justify restrictions limiting prisoners' [first amendment] rights. 417 U.S. at 821." *Adams*, 784 F.2d at 1081. Having said all that, the court has no hesitancy in concluding that the speech for which the defendants disciplined Boyd, i.e., expressing personal feelings towards Ms. Foster, is properly restricted by the legitimate penological objective of maintaining institutional security and order and is therefore not protected speech. *Pell*, 417 U.S. at 821. Consequently, the defendants are entitled to summary judgment on the First Amendment claim.

### C.  Violation of Counselor Oath

Boyd complains defendant Foster violated her oath as a counselor when she allowed correctional officials access to the letter he had written her. An essential element of a 42 U.S.C. § 1983 action is that the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 985, 143 L.Ed.2d 130

(1999); *Parratt v. Taylor*, 451 U.S. 527 (1981).  The action about which the Boyd complains did not violate either his constitutional rights or any federal law.[4]  Thus, this claim entitles Boyd to no relief.

### D.  Placement in the Restricted Privilege Dorm

1.  <u>Due Process</u>.  Boyd complains that his placement in the restricted privilege dorm based on the behavior citation for his violation of a disciplinary rule deprived him of due process.  Under the circumstances of this case, Boyd's due process challenge entitles him to no relief.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required.  "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.  *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'  *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v.*

---

[4]In *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996), the Supreme Court established a psychotherapist-patient privilege in federal cases.  But an evidentiary privilege is not a right within the meaing of 42 U.S.C. § 1983.

*McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *see also Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). Thus, the temporary placement of Boyd in a restricted privilege dorm based on the behavior citation did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give

14

rise to protection by the Due Process Clause of its own force." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300. This court must therefore determine whether the action about which Boyd complains involves the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin.*

As the Supreme Court observed,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
>
> After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry, the court concludes that the placement of Boyd in the restricted privilege dorm "though concededly punitive, does not represent a dramatic departure from the basic conditions" of the sentence imposed upon him. *Id*. at 485. In light of the foregoing, it is clear that the aforementioned action fails to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Thus, the plaintiff's challenge to his confinement in the restricted privilege dorm fails to implicate any protected liberty interest as such confinement does not present "the type of atypical, significant deprivation [that] might conceivably create a liberty interest." *Sandin*, 515 U.S. at 486. Summary judgment is therefore due to be granted in favor of the defendants on the due process claim.

2. <u>Cruel and Unusual Punishment</u>. Boyd alleges his placement in the restricted privilege dorm constituted cruel and unusual punishment. The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Only actions which deny an inmate "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991). Boyd fails to identify any condition related to his placement in the restricted privilege dorm which rises to the level of an Eighth Amendment violation. In light of the foregoing, the defendants are entitled to summary judgment on this claim.

**E. Deliberate Indifference to Mental Health**

Correctional officials may be held liable under the Eighth Amendment for acting with

"deliberate indifference" to an inmate's health when the official knows that the inmate faces

"a substantial risk of serious harm" and with such knowledge disregards that risk by failing

to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  A

constitutional violation occurs only "when a substantial risk of serious harm, of which the

official is subjectively aware, exists and the official does not 'respond[] reasonably to the

risk.'  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994).

A plaintiff must also show that the constitutional violation caused his injuries."  *Marsh v.

Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to

establish an Eighth Amendment violation.  With respect to the requisite objective elements,

an inmate must first show "an objectively substantial risk of serious harm ... exist[ed].

Second, once it is established that the official is aware of this substantial risk, the official

must react to this risk in an objectively unreasonable manner."  *Marsh*, 268 F.3d 1028-1029.

As to the subjective elements, "the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw

the inference....  The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it

outlaws cruel and unusual 'punishments.' ... ***[A]n official's failure to alleviate a significant***

***risk that he should have perceived but did not, while no cause for commendation, cannot***

***under our cases be condemned as the infliction of punishment***."  *Farmer*, 511 U.S. at 837-

838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing

*Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did

17

not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

To prevail on a claim concerning an alleged denial of adequate mental health treatment, an inmate must, at a minimum, show that the named defendants acted with deliberate indifference to a serious mental health need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, correctional personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious [mental health] needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of

and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted). Thus, in order to survive summary judgment on his deliberate indifference claim against defendants Canty and Baldwin, Boyd is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d

1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To evade entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence demonstrating (1) an objectively substantial risk of serious harm; (2) subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029.

On October 2, 2007, Boyd requested and received a consultation with mental health professionals. *Medical Records of Courtney Boyd - Court Doc. No. 14-1* at 44. At this time, Boyd advised he did not "'want medication.' I just need counseling, it helps me to talk." *Id*. Boyd denied any "suicidal/homicidal ideations" but did "report[] experiencing worry & panic attacks associated with incarceration." *Id*. The attending mental health professional enrolled Boyd in group therapy and referred him to [the] Psychiatrist for evaluation." *Id*.

On October 8, 2007, Ms. Caffie, a mental health professional, evaluated Boyd. During this evaluation, Boyd advised Ms. Caffie that he felt stressed because correctional officials had placed him in the restricted privilege dorm based on the letter he wrote to Ms. Foster. *Medical Records of Courtney Boyd - Court Doc. No. 14-1* at 43. Ms. Caffie observed that Boyd was "[a]lert, oriented, [with] appropriate ... mood, [and zero] suicidal/homicidal ideations." *Id*. Ms. Caffie further noted that Boyd was "[r]elatively

stable" and indicated she "[s]uspected manipulation" by the inmate.  *Id*.  Ms. Caffie nevertheless referred Boyd to the psychiatrist for additional evaluation.

In the morning hours of October 10, 2007, Dr. Ferrell evaluated Boyd regarding his complaints of stress and depression arising from the status of his confinement.  After a discussion with Boyd regarding possible medications and a referral for group therapy, Boyd mentioned his letter to Ms. Foster.  Dr. Ferrell advised she knew about the letter and dismissed Boyd from her office at which time Boyd returned to the restricted privilege dorm.  Boyd asserts his "stress level went even higher to the point [he] started having suicide thoughts."  *Plaintiff's Complaint - Court Doc. No. 1* at 7.  Boyd alleges he advised officers Baldwin and Canty of his thoughts to which the officers responded they "need[ed] to see some blood" before they would "do anything" for him.  *Id*.  Boyd then scratched his right wrist and the officers escorted him to the health care unit for treatment.  *Id*.

Upon arrival at the health care unit, the nurse observed a "[s]mall superficial scratch" on Boyd's right wrist with no "active bleeding."  *Medical Records of Courtney Boyd - Court Doc. No. 14-1* at 9.  Boyd advised the attending nurse he "want[ed] to see mental health" regarding his stress level.  *Id*.  In addition, Boyd told the nurse he did not want to kill himself and injured himself merely because he wanted to again be seen by mental health because he was "'stressing real bad.'"  *Id*.  The nurse deemed no treatment necessary for the scratch to Boyd's wrist and notified mental health of her observations.  Pursuant to the

nurse's referral, Mr. Mitchell, a mental health care provider, evaluated Boyd.

Boyd complained to Mr. Mitchell of "stressing" and alleged neither "the doctor" nor anyone else will "take me serious....  I'm stressing and people think I'm trying to see Ms. Foster.  I'm not suicidal or homicidal, I'm stressing.... [Inmate complains of] not getting incentive package or family contact [due to placement in the restricted privilege dorm]. Inmate [complains of] being locked up over a letter [and] having his patient confidence broken over the letter...."  *Medical Records of Courtney Boyd - Court Doc. No. 14-1* at 49-50.  Mr. Mitchell observed "good eye contact, faint scratch on arm, smiling [and] good voice tone.... Upset over recent placement in restricted dorm for writing a letter to a mental health professional and not getting an incentive package.  Inmate previously admitted he knew writing the letter was wrong."  *Id*. at 50.  Mr. Mitchell referred Boyd to the psychiatrist for further evaluation.

Dr. Ferrell, the attending psychiatrist, in the presence of Mr. Mitchell and a nurse, discussed with Boyd his "making a very superficial scratch to arm."  *Medical Records of Courtney Boyd - Court Doc. No. 14-1* at 48.  Dr. Ferrell again advised Boyd of medications which could be utilized in the treatment of his stress.  "Inmate 'backpedaled' from his a.m. stance, & verbalized willingness to take low dose [of] Vistaril ... for 'stressing.'  Inmate adamantly denies both suicidal and homicidal ideations, intent, or plan.  Once again urged to explore coping skills and stress [management] classes in conjunction with [medication].

Daily [medication] compliance emphasized." *Id*. Mental health professionals likewise deemed Boyd's behavior, especially his actions toward correctional officials, as malingering and manipulative. *Medical Records of Courtney Boyd - Court Doc. No. 14-1* at 54-58.

Defendants Canty and Baldwin state Boyd never reported to them that he was having suicidal thoughts and maintain neither of them advised Boyd they wanted to see blood. *Correctional Defendants' Exhibit B (Affidavit of Steven Canty) - Court Doc. No. 22-2* at 1; *Correctional Defendants' Exhibit C (Affidavit of Dexter Baldwin) - Court Doc. No. 22-3* at 1. They deny any knowledge of Boyd suffering suicidal tendencies. *Id*. The undisputed evidentiary materials before the court further indicate Canty and Baldwin at all times allowed Boyd unlimited access to mental health professionals, including immediately prior to and after his alleged "suicidal thoughts" on October 10, 2007. Moreover, during his numerous evaluations/examinations by both mental health and medical professionals, including those which occurred on October 10, 2007, Boyd repeatedly and adamantly denied ever having suicidal thoughts and, instead, consistently advised he was merely stressed about his incarceration.

Boyd fails to present sufficient evidence to create a genuine issue of disputed fact with respect to his claim that defendants Canty and Baldwin acted with deliberate indifference to his mental health needs. Specifically, the record does not indicate that defendants Canty and Baldwin had knowledge of specific facts from which an inference

could be drawn that a substantial risk of harm existed to Boyd, that these defendants actually drew this inference and thereafter ignored the risk. Boyd has therefore failed to establish each of the requisite elements of his deliberate indifference claim against defendants Canty and Baldwin. *Carter*, 352 F.3d at 1350. Consequently, summary judgment is due to be granted in favor of these defendants.

### F. Negligence

Boyd asserts the actions of the defendants constituted negligence. The law is well settled that the Constitution is not implicated by negligent acts of an official. *Daniels v. Williams*, 474 U.S. 327 (1986); *Mandel v. Doe*, 888 F.2d 783,787-788 (11th Cir. 1989) (mere negligence insufficient to establish constitutional violation); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (protections of the Constitution "are just not triggered by lack of due care by prison officials."). Accordingly, the alleged negligent actions about which the plaintiff complains do not rise to the level of a constitutional violation and provide no basis for relief in this 42 U.S.C. § 1983 action.

A separate order will accompany this memorandum opinion.

Done this 7th day of July, 2010.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

24